## BOWER *v.* COHEN *et al.*

1. Under the statute enacted in the reign of George II, and even prior thereto, the landlord was permitted to appear and defend in an action of ejectment, and the word "landlord" was interpreted to include all persons claiming title consistent with the persons sued as tenants in possession.
2. The preliminary showing as to the loss or destruction of the deeds, copies of which were sought to be introduced in evidence, was not sufficient to authorize their introduction.
3. A copy from the registry of a deed having only one witness can not be admitted in evidence under the provisions of the Civil Code, § 3630.
4. A paper purporting to be a map showing a subdivision of land into lots and streets is not admissible in evidence unless it appears that the map was made by some officer authorized to make a survey, or there is evidence as to its genuineness and correctness from the person who made it, or other reliable source. The mere fact that it appears from an entry thereon to have been made more than thirty years before it is offered in evidence, will not render it admissible when it does not appear by whom the entry was made.
5. When one buys at a tax sale under the honest belief that he is acquiring a good title, and goes into possession under the sheriff's deed, he is not chargeable with moral fraud merely because he made a mistake of law as to the validity of the sale.

Submitted March 3,—Decided July 28, 1906.

Ejectment. Before Judge Spence. Decatur superior court. July 24, 1905.

*Bower & Bower, Russell & Hawes,* and *Byron Bower,* for plaintiff. *Garrard & Meldrim* and *M. E. O'Neal,* for defendants.

COBB, P. J. This was an action of ejectment in the common-law form. The trial resulted in a verdict for the defendants. The

plaintiff assigned error upon a refusal to grant a new trial, and upon certain exceptions pendente lite.

1. The original defendants were E. A. Cohen, Nancy Overstreet,. and Julian Ehrlich. They all appeared and filed a plea of the general issue. Subsequently the plaintiff dismissed the action as to Nancy Overstreet. After the order of dismissal had been taken, Nancy Overstreet filed an application asking that she be reinstated. as a party defendant to the case. This motion was granted, and she: was permitted to appear and defend. Error is assigned upon the ruling of the court reinstating Nancy Overstreet as a party. The tenant in possession is generally the only necessary party defendant. to an action of ejectment. The plaintiff may make all persons in-- terested in the property defendants to the action, and if such persons. or any of them appear and admit possession of the premises in dis-- pute at the commencement of the action, they will be permitted to. defend. Civil Code, §5656. If the true claimant is not made a. party defendant when the suit is instituted, the plaintiff may cause a copy of the pending action to be served upon him; and when this. is done, he will be bound by the judgment. Civil Code, §5001. During the reign of George II, an act was passed which authorized the landlord to make himself a defendant, by joining with the ten-- ants in case they appeared; and in the event the tenants neglected. or refused to appear, the landlord was permitted to do so. It has. been said that this act was merely a legislative sanction of a previous. uniform practice. In 1652 it was said by the Prothonotary, "The· court would upon terms allow him who alleged title to defend it." In an early case one "claiming the reversion by deed after the ten-- ant for life, who received the rents, was admitted to defend because. it might shake his title." Tyler on Ejectment, p. 443, et seq. In Fairclaim *v.* Shamtitle, 3 Burr. 1290, the principle was established that the act of George II was to be interpreted so as to extend the· word "landlord" to all persons claiming title consistent with the possession of the occupier, and that it was not necessary that they should previously have exercised any act of ownership over the land in dispute. Lord Mansfield said: "Where a person claims in op-- position to the title of the tenant in possession, he can in no light. be considered as a landlord, and it would be unjust to the tenant to make him a codefendant. Their defenses might clash. Whereas when there is privity between them, the defenses must be upon the:

same bottom, and letting in the person behind can only operate to prevent treachery and fraud. It is no answer that 'any person affected by the judgment can bring a new ejectment.' Because there is a great difference between plaintiff and defendant in ejectment." See also Warvelle on Ejectment, §§107, 154; 15 Cyc. 85. In Ralston v. Dover, 36 Ga. 611, Judge Walker recognizes the rule that the landlord might be admitted as a codefendant with his tenant; but a new trial was refused in that case, notwithstanding the court had refused to admit the landlord as a defendant, for the reason that it appeared that the case was decided correctly, and the landlord, though not an actual party to the record, had been accorded at the trial all rights that he would have acquired if he had been admitted. The learned judge remarked, "Perhaps, if we thought that justice had not been done, we might seize upon this as a ground to set aside the verdict." It also appears from the opinion that Judge Walker entertained the view that the court had some discretion in admitting parties defendant in actions of ejectment, and that it did not appear in this case that this discretion had been abused. In Wilborn v. Whitfield, 44 Ga. 51, the tenant in possession appeared and alleged that he was not the owner of the land, that his children held title, and asked that they be admitted to defend. The court refused to allow the children to be made parties defendant, and the judgment was reversed. In the present case it appears that Nancy Overstreet claims under a bond for titles from Cohen, one of the original defendants. If she had not been made a party to the original suit, she might have been admitted on her own motion as a party defendant to the case. The plaintiff had a right to dismiss his action either in its entirety or as to one or more of the parties defendant, there being at the time of the dismissal no plea filed by any of the defendants asking for affirmative relief against the plaintiff. Walker v. Wadley, 124 Ga. 275(6). But this did not deprive the court of the right to admit the party thus dismissed to appear thereafter and to defend the action, if the right to appear and defend existed. While the order sets forth that Nancy Overstreet is reinstated as a defendant, the legal effect of the same is to admit her to appear and defend the action. If she had a right to appear and defend, the action of the court, although informal and irregular, brought about the proper result, and the judgment will not be reversed on account of the inapt expressions used in the

application or in the order thereon. Even if the court had a dis-
cretion in reference to the matter, as suggested by Judge Walker in
the above-cited case, there was no abuse of discretion in admitting
Nancy Overstreet as a party defendant in the case. When once
admitted as a defendant, she had all the rights she would have had
if she had been a party defendant to the suit originally.

2. The court admitted in evidence copies from the registry of
several deeds, as part of the defendants' chain of title. Objection
was made to the admission of these deeds, upon the ground that
there had been no sufficent proof of the loss of the originals. The
defendant Cohen testified, as appears from the motion, that he had
endeavored to obtain the originals from the administrator of J. A.
Roberts, and was informed by him that he did not have them; and
that he had never asked anybody about the deeds, except the ad-
ministrator of Roberts. Roberts was not a party to any of the
deeds, and there is nothing in the motion to indicate the connection
Roberts had with the chain of title. According to the evidence as
set forth in the ground of the motion, the showing as to the loss of
the originals and search for the same was insufficient. It appeared,
during the progress of the trial, that Cohen claimed under a deed
from Platshek, who in turn claimed under a deed from the adminis-
trator of Roberts. If it had appeared that the estate of Roberts
still retained any part of the tract originally conveyed to him, the
administrator of the estate might be looked to as a proper custodian
of the chain of title. But this did not appear in the preliminary
showing, and before the copies were admitted in evidence the plain-
tiff should have at least shown that the deeds were not in the posses-
sion of his immediate grantor, Platshek, who would have been the
proper custodian, if Roberts parted with title to all the property in
the conveyance to Platshek. The code declares, "If the original
deed be lost, a copy from the registry, if duly recorded, shall be ad-
mitted in evidence whenever the court is satisfied of the fact of loss
or destruction; and to this fact a party may be a witness." Civil
Code, § 3630. It has been held that the sufficiency of the evidence
of the loss or destruction is within the discretion of the court.
*Cox* v. *McDonald*, 118 *Ga.* 414. While the court has a discretion
as to the weight of evidence showing loss or destruction, we do not
think that mere proof that inquiry from one person only, whose
name appears in the chain of title subsequent to the execution of

the deed sought to be introduced, will be a sufficient foundation for the introduction of secondary evidence. And especially is this true, when the evidence does not disclose that any inquiry was made of the immediate predecessor in title of the party seeking to introduce the copy deeds.

3. Further objection was made to one of the copy deeds, upon the ground that there was only one witness to the deed, and this witness was not an officer; and also upon the ground that the deed was upon a condition, and there was no evidence to show that the condition had been complied with. The latter ground of the objection was not well taken. When the paper is construed as a whole, it is evident that it was not intended as a deed upon condition. It was simply recited as a part of the consideration that the grantee had agreed to discharge a specified obligation of the grantor. The paper passed title as a conveyance; and if the grantee failed to discharge the obligation assumed, he would be liable to the grantor on the covenant in the deed. The objection that the deed had only one witness was well taken. Such a deed is not entitled to registry, and a copy of the same though registered is no more than a copy at any other place. There being no law authorizing such a deed to be registered, there is no presumption that it is a copy of the original. See, in this connection, *Oliver* v. *Persons,* 30 *Ga.* 398.

4. The court admitted in evidence what purported to be a map embracing the property in dispute, the paper showing a subdivision of lots, and streets and roads. By an entry thereon it purported to have been made by one J. H. Carter, in 1859. There was no evidence that Carter was county surveyor, or that he made the map under authority of any law or order of court. Nor was there anything to indicate at whose instance the map was made. Nor was there any evidence that it was correct. J. E. Donalson, Esq., testified that Potter, who at one time had an interest in the property embraced therein, gave the map to him for the reason that he had an interest in the property. It was also shown that Donalson had loaned the map to the plaintiff, and that it was in the possession of the plaintiff at the time of the trial. There was also evidence that the map had been recorded. In *Maples* v. *Holland,* 58 *Ga.* 315, it was held that surveys made by others than county surveyors are not admissible in evidence, unless proved by the parties who made them. See also *Parker* v. *Salmons,* 113 *Ga.* 1167 (3) ; *Acme Brewing Co.* v.

*Central R. Co.,* 115 *Ga.* 495 (5) ; *Brantley* v. *Huff,* 62 *Ga.* 532 (1) ; 17 Cyc. 412; and 8 Enc. Ev. 434, et seq. It is contended that as this map appears to be more than thirty years old, and there is nothing suspicious in its appearance, it is prima facie admissible. There was no evidence as to the age of the map, except the date thereon and the evidence of Donalson. Donalson came into possession of the map within much less than thirty years from the date on the map; and the mere date on the map, without evidence as to who placed it there, would not be evidence of its age, even if the rule admitting a map thirty years old applies at all to private maps. It is true that it comes from the possession of Donalson who was and is an owner of part of the property described therein. But he does not testify as to its genuineness or its correctness, and apparently knows nothing about the paper except that he received it from Potter, a former owner of a portion of the property. We think it would be relaxing the rule too much to allow a paper, having the effect which this paper would have upon the rights of the parties, to be admitted in evidence upon such a weak showing as to its correctness and genuineness. The error in admitting this evidence was vital. The plaintiff does not claim ownership by paper title. He relies upon prescription under color. He claims under a tax deed which is admitted to be void. He has been in actual possession of only thirty-six acres of the tract. If he has title to the property in dispute, it results from constructive possession only, and this constructive possession will not avail him unless at the time he went into possession the land in dispute was embraced in one tract. The effect of the map was to show that it was not one tract. While the other errors committed might not have been sufficient to require the granting of a new trial, we think this error demands a reversal of the judgment.

5. If the prescriber claims under color, and the writing is forged or fraudulent, and he has notice of the same before or at the time of the commencement of the possession, no prescription can be based thereon. Civil Code, §§ 3584, 3589. The fraud contemplated by these provisions of the law is not mere legal fraud. It is that class of fraud denominated moral fraud. That is, there must be something in the transaction which charges the conscience of the prescriber. *Wingfield* v. *Virgin,* 51 *Ga.* 143; *Ware* v. *Barlow,* 81 *Ga.* 1; *Ellis* v. *Dasher,* 101 *Ga.* 8; *Street* v. *Collier,* 118 *Ga.* 470. An

honest mistake of law as to the effect of the writing can not, of course, amount to a moral fraud as against the true owner. In the present case a lot of land partly improved and partly unimproved was sold at tax sale in 1884, as unreturned wild land. This sale was void. *Brown* v. *Powell,* 85 *Ga.* 603; *Hutchins* v. *Tenant;* 73 *Ga.* 95; *So. Bank. & Trust Co.* v. *Wilcox Lumber Co.,* 119 *Ga.* 519. The plaintiff was the purchaser at the sale. He had nothing to do with bringing about the sale. At the time he bought, it was an open question as to whether the sale of improved land under a proceeding by a tax-collector describing it as wild was valid. In *Gardner* v. *Donalson,* 80 *Ga.* 71, Mr. Chief Justice Bleckley said that there was doubt as to whether such a sale would be invalid. Subsequently in *Brown* v. *Powell,* supra, a decision rendered in 1890, such a sale was held to be invalid. When the plaintiff bought in 1884 under the belief that he obtained a good title, he made a mistake as to the law. Certainly he is not to be charged with bad faith or moral obliquity simply because he decided the doubtful legal question in the wrong way. When he took the sheriff's deed and went into possession of the land, the law presumed that he bought in good faith, and it was incumbent upon those who attacked his claim of title to overcome this presumption. In order to overcome it, it must appear by a preponderance of evidence that the transaction, so far as his connection with it was concerned, was tainted with moral fraud; that is, that there was a covinous intention in procuring the deed. *Lee* v. *Ogden,* 83 *Ga.* 329. If when he went into possession he believed that he acquired title to the property, the fact that he made a mistake as to the law could not make him guilty of a moral fraud. If he believed that the sheriff's deed gave him title to the entire land, or if he believed that it gave him title to only so much as was wild land, and he only took possession of so much as he believed he acquired title to, the mistake of law that he acted upon in either instance would not amount to moral fraud. If his original possession was in good faith, the fact that during the time his possession was ripening into title he became acquainted with the fact that he had made a mistake as to the law, and notwithstanding knowledge of this fact he endeavored to acquire title by continued possession, this would not defeat his prescription, if it originated in good faith. If there was actual moral fraud on his part in staying in possession after becoming acquainted

with the fact that his title was invalid, this would not defeat his prescriptive title, provided his original possession was in good faith. In *Wingfield* v. *Virgin,* supra, the defendant bought in 1863 what he believed was a good title to the property. It developed that the title was bad, and in 1864 he attempted to perfect his title by taking a second deed.    Mr. Chief Justice Warner in the opinion says: "But assuming that there was actual moral fraud on the part of Wylly in procuring the second deed, as the complainants contend, there is still his prescriptive title under which he claims possession of the property, which did not originate in that second deed. · In order to defeat Wylly's prescriptive title for fraud, his written evidence of title under which he went into possession of the property must be shown to have been fraudulent within his own ·knowledge, or notice thereof brought home to him before or at the time of the commencement of his possession."

What we have said sufficiently disposes of all of the assignments of error that need to be considered.    Any inaccuracies that may have crept into the charge will no doubt be corrected by the judge on the second trial.

*Judgment reversed.    All the Justices concur, except Fish, C. J., absent.*